STATE OF NORTH CAROLINA v. RANDY ANTONIO COX

No. 26A96

(Filed 31 July 1996)

1. **Evidence and Witnesses § 2528 (NCI4th)— capital murder—competency of witness—mental capacity**

The trial court did not err in a capital prosecution for first-degree murder by not acting *ex mero motu* to disqualify the victim's mother as a witness where the witness had difficulty answering some of the questions and gave answers that were not responsive, and the court indicated at a bench conference that it believed the witness was "of low mentality" and said that it would allow the prosecutor to ask leading questions. The record does not show that the witness was incapable of expressing herself or incapable of understanding her duty to tell the truth and the fact that the court felt she was of low mentality did not disqualify her.

**Am Jur 2d, Witnesses §§ 163, 187.**

2. **Evidence and Witnesses § 2815 (NCI4th)— capital murder—witness answering with difficulty or not responsively—use of leading questions**

The trial court did not abuse its discretion in a capital prosecution for first-degree murder by allowing the State to ask leading questions where the witness had difficulty answering some of the questions and gave answers that were not responsive, and the

court indicated at a bench conference that it believed the witness was "of low mentality" and said that it would allow the prosecutor to ask leading questions. The State used leading questions sparingly and where necessary to direct the witness's attention, to elicit the truth and not inadmissible statements, and to expedite the trial. Use of leading questions is committed to the discretion of the trial judge and is permissible when the witness has difficulty understanding questions because of immaturity, age, infirmity, or ignorance.

**Am Jur 2d, Witnesses §§ 752-756.**

**3. Evidence and Witnesses § 163 (NCI4th)— capital murder— threat by defendant to victim—time between threat and murder—goes to weight**

The trial court did not err in a capital prosecution for a first-degree murder committed on 27 January 1994 by admitting testimony that on 30 November 1993 defendant told the victim that he would kill her if she did not come out of her room. Evidence of previous threats is admissible in trials for first-degree murder to prove premeditation and deliberation; remoteness in time goes to the weight of the evidence and does not make it inadmissible.

**Am Jur 2d, Evidence, §§ 1430 et seq.**

**4. Criminal Law § 560 (NCI4th)— capital murder—evidence that victim pregnant excluded—reference in telephone call between victim and defendant—mistrial denied**

The trial court did not err by not granting a mistrial in a capital prosecution for first-degree murder where the trial court had granted a motion *in limine* to exclude any evidence that the victim was pregnant when killed, a witness testified that she had heard the victim say during a telephone conversation with defendant "I don't want you because you tried to get me to kill my baby," and the court instructed the jury to disregard this testimony. Assuming that the court was correct in its ruling on the motion *in limine*, it is not clear that the victim was speaking of an unborn baby and, even so, evidence that she was pregnant when she was killed was tangential to the issues in this trial. Jurors are presumed to follow the court's instructions when they are told not to consider testimony.

**Am Jur 2d, Trial § 616.**

**5. Evidence and Witnesses § 155 (NCI4th)— capital murder— telephone conversation with victim—identification of defendant as caller**

The trial court did not err in a capital prosecution for first-degree murder by not granting a mistrial after the victim's aunt testified as to what she heard the victim say to defendant in a telephone conversation. Although defendant contends that the identification of defendant as the person talking with the victim was not properly authenticated, N.C.G.S. § 8C-1, Rule 901(b) makes clear that the method prescribed by that section for identifying a telephone caller is not exclusive and, in this case, the quick succession of calls and the nature of the relationship, as well as the witness's familiarity with the defendant's attempts to contact the victim and the breakdown of their relationship, support the inference that the defendant was the caller.

**Am Jur 2d, Evidence § 562.**

**6. Evidence and Witnesses § 881 (NCI4th)— capital murder— telephone conversation between victim and defendant— victim's statement—admissible to show motive**

The trial court did not err in a capital prosecution for first-degree murder by not granting a mistrial after the victim's aunt testified that she heard the victim say to defendant in a telephone conversation that she didn't want him and didn't want to go back with him because he tried to get her to kill her child and the court granted a motion to strike. It would not have been error to admit the testimony; the statement that the victim would not go back to defendant because he had tried to get her to kill their child was not introduced to prove the truth of the statement, but to prove that she said it, which gave the defendant a motive to kill her whether or not she meant it.

**Am Jur 2d, Trial § 1391.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Llewellyn, J., at the 8 May 1995 Criminal Session of Superior Court, Lenoir County, upon a verdict of guilty of first-degree murder in a case tried capitally. Heard in the Supreme Court 14 May 1996.

The defendant was tried for first-degree murder, breaking or entering, and possession of stolen goods. The evidence showed that

STATE v. COX

[344 N.C. 184 (1996)]

on 27 January 1994, the defendant entered the home of his girlfriend's grandmother and shot his girlfriend, Yonnie Staten, in the head and back, killing her. The defendant and Yonnie Staten had one child, six-month-old Kenisha, who was present in another room of the house during the shooting. The victim's mother and aunt also lived in the home and were present the day of the shooting as well.

The defendant was found guilty of first-degree murder on the basis of premeditation and deliberation and guilty of breaking or entering. After a capital sentencing hearing, the jury recommended a sentence of life in prison for the first-degree murder conviction. The judge sentenced the defendant to life imprisonment for first-degree murder and to a consecutive term of ten years' imprisonment for the breaking or entering. The defendant appealed.

*Michael F. Easley, Attorney General, by Francis W. Crawley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by J. Michael Smith, Assistant Appellate Defender, for the defendant-appellant.*

WEBB, Justice.

[1] In his first assignment of error, the defendant makes two arguments. He says first that the court should have disqualified Barbara Staten, the victim's mother, as a witness. He says next that the court should not have allowed the State to ask leading questions of Mrs. Staten.

While Mrs. Staten was testifying, she had difficulty answering some of the questions and gave answers that were not responsive. At a bench conference, the court indicated it believed the witness was "of low mentality." The court said it would allow the prosecuting attorney to ask leading questions of this witness.

The defendant says the court should have held this witness to be incompetent to testify. The defendant did not move for the disqualification of this witness, but he says the court should have done so on its own motion. N.C.G.S. § 8C-1, Rule 601(b) provides:

A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through

interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

N.C.G.S. § 8C-1, Rule 601(b) (1992). We cannot say the record shows that the witness was incapable of expressing herself or was incapable of understanding her duty to tell the truth such that the court should have disqualified her as a witness on its own motion. She was able to describe her extended family and their living arrangement as well as the events of 27 January 1994. The fact that the court felt she was of low mentality did not disqualify her.

[2] The determination of the use of leading questions is committed to the discretion of the trial judge. N.C.G.S. § 8C-1, Rule 611(a), (c) (1992); *State v. Smith*, 290 N.C. 148, 226 S.E.2d 10, *cert. denied*, 429 U.S. 932, 50 L. Ed. 2d 301 (1976). Leading questions are permissible when the witness has difficulty understanding questions because of immaturity, age, infirmity, or ignorance. *State v. Greene*, 285 N.C. 482, 492, 206 S.E.2d 229, 236 (1974). In this case, the witness was having trouble answering questions that were put to her. The State used leading questions sparingly and where necessary to direct the witness's attention, to elicit the truth and not inadmissible statements, and to expedite the trial. The defendant has failed to show abuse of discretion by the court in allowing the use of leading questions with this witness.

This assignment of error is overruled.

[3] The defendant next assigns error to the testimony of Barbara Staten that on 30 November 1993, the defendant came into her home and told Yonnie he would kill her if she did not come out of her room. The defendant says this evidence tended to prove his state of mind on 30 November 1993, which was too remote from the date of the murder to be relevant. The defendant also says testimony as to this threat was proof of a bad act for the purpose of proving his disposition to commit the murder of Yonnie Staten. The defendant contends this violates N.C.G.S. § 8C-1, Rule 404(b).

Evidence of previous threats is admissible in trials for first-degree murder to prove premeditation and deliberation. The remoteness in time of the threat goes to its weight and does not make it inadmissible. *State v. Myers*, 299 N.C. 671, 675, 263 S.E.2d 768, 771 (1980).

This assignment of error is overruled.

**[4]** The defendant next assigns error to the denial of his motion for a mistrial. Before the commencement of the trial, the court granted a motion *in limine* by the defendant to exclude any evidence that Yonnie Staten was pregnant at the time she was killed. While Barbara Staten was testifying as to a telephone conversation she heard Yonnie have with the defendant, she said she heard Yonnie say, "I don't want you because you tried to get me to kill my baby." The court instructed the jury to disregard this testimony.

The defendant says that it was error to allow this testimony that showed Yonnie was pregnant and that the testimony was so inherently prejudicial that it could not be cured by a corrective instruction. *State v. Gregory*, 342 N.C. 580, 588, 467 S.E.2d 28, 33 (1996). Assuming that the court was correct in its ruling on the motion *in limine*, a mistrial would not have been appropriate based on this colloquy. It is not clear that Yonnie was speaking of an unborn baby; even if she was, however, evidence that she was pregnant when she was killed was tangential to the issues in this trial. It is speculative as to how much it prejudiced the defendant. Jurors are presumed to follow the court's instructions when they are told not to consider testimony. *State v. Clark*, 298 N.C. 529, 534, 259 S.E.2d 271, 274 (1979).

This assignment of error is overruled.

**[5]** In his last assignment of error, the defendant contends that testimony by Kathy Williams, the victim's aunt, should have been excluded. Mrs. Williams testified as to what she heard Yonnie say to the defendant in a telephone conversation on the morning of the day she was killed. The defendant says this was error. Yonnie's oldest daughter, Miesha, answered the telephone that morning and said, "Mama, it's Randy." Yonnie took the telephone and talked briefly before terminating the conversation. A few moments later, the telephone again rang and Yonnie answered. Mrs. Williams testified that she heard Yonnie say "that she didn't want him no more and didn't want to go back with him because he tried to get her to kill Kenisha." The court allowed a motion to strike this statement.

The defendant says it was error not to declare a mistrial because the identification of the defendant as the person talking with Yonnie on the telephone was not properly authenticated, and the testimony as to what Yonnie said was inadmissible hearsay. The defendant says that the requirements of N.C.G.S. § 8C-1, Rule 901(b)(6) as to the identity of a person talking on a telephone were not met. N.C.G.S. § 8C-1, Rule 901(b) makes clear that the method prescribed by that

section for identifying a telephone caller is not exclusive. We hold that the quick succession of calls and nature of the conversation, as well as the witness's familiarity with the defendant's attempts to contact the victim and the breakdown of their relationship, support the inference that the defendant was the second caller.

**[6]** It would not have been error to admit the testimony of Mrs. Williams as to what she heard Yonnie say to the defendant. This testimony was not hearsay. The statement that she would not go back to the defendant because he had tried to get her to kill their child was not introduced to prove that she would not return to him or that he had tried to get her to kill their child. It was introduced not to prove the truth of Yonnie's statement, but to prove she said it. If she said it, this gave the defendant a motive to kill her whether or not she meant it. Whether Yonnie said it did not depend on Yonnie's credibility but on the credibility of Kathy Williams, the testifying witness. *See* N.C.G.S. § 8C-1, Rule 801(c) (1992); *State v. Crump*, 277 N.C. 573, 178 S.E.2d 366 (1971).

This assignment of error is overruled.

We note that the record filed with this Court does not show any appeal was taken from the defendant's conviction for breaking or entering. We do not pass on that case. In the defendant's conviction for first-degree murder, we find no error.

NO ERROR.